UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00211-MOC

| AMY MCNABB, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 13). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff filed an application for a period of disability and disability income benefits ("DIB") under Title II of the Social Security Act ("Act") on July 11, 2006 alleging disability beginning June 30, 2005. (Doc. No. 8-3 at 1). Plaintiff applied for supplemental security income benefits on July 19, 2006 under Title XVI of the Act. (Doc. No. 8-6 at 7–10). Both applications were granted, and Plaintiff was awarded disability benefits by Administrative Law Judge ("ALJ") Schwartzberg on April 8, 2009. (Id.).

In 2014, as a matter of re-assessing Plaintiff's benefits, the Disability Determination Service conducted a paper agency review of Plaintiff's medical treatment records, after which the Service issued an order with its finding that Plaintiff's disability continued. (Doc. Nos. 8-3 at 16,

8-5 at 2). This continuing disability paper review determination is known as the "comparison point decision" ("CPD"), as it is the most recent favorable medical decision finding that the claimant continued to be disabled. (Doc. No. 8-3 at 18). On February 4, 2019, Defendant issued a notice of disability cessation outlining the medical evidence on which the award of disability was based in 2014 (CPD) and the later evidence on which the cessation was based. (Doc. No. 8-5 at 7, 10). Plaintiff appealed the decision to a hearing officer ("HO") with the Social Security Administration, who wrote a detailed opinion affirming the cessation of her benefits on June 4, 2019. (Id. at 16–25). Plaintiff appealed the HO's decision to ALJ Hogan in 2019 where the Disability Determination Service, through ALJ Hogan, concluded that Plaintiff's disability had abated to the point of enabling Plaintiff to work, albeit with a few limitations due to her underlying residual mental health impairments. (Doc. No. 8-3 at 17). As a result of these findings, Plaintiff's disability benefits and supplemental income were terminated as of ALJ Hogan's decision on December 16, 2020. (Id. at 23). The Appeals Council denied review of ALJ Hogan's decision. (Id. at 2).

Having exhausted her administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

### II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ

is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. For the Title II claim for DIB, the Commissioner uses an eight-step evaluation process to determine whether the Plaintiff continues to be disabled. (Doc. No. 8-3 at 16). For the Title XVI claim for supplemental income, the Commissioner uses a seven-step evaluation process to determine continuing disability. (Id.). The Title II analysis in steps two through eight follows exactly the analysis for the Title XVI claim. (Doc. No. 14 at 6). The only difference in the two processes is that the first step in the DIB Title II evaluation is not used in the supplemental income Title XVI claim evaluation. (Id.). The Commissioner evaluates disability claims like Plaintiff's pursuant to the following analysis:

i. Step One: if the claimant is currently engaged in substantial gainful activity, and any applicable trial work period has been completed, the claim is denied. This step only applies to the Title II claim for disability benefits.

ii. Step Two: the ALJ must compare the claimant's impairment or combination of impairments to those in the Listings of Impairments (the "Listings") as contained in 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment or combination of impairments

meets or equals a Listing, disability is presumed. If the claimant's impairments do not meet or equal a Listing, the ALJ proceeds to Step Three.

iii. Step Three: The ALJ must determine if medical improvement has occurred. If improvement has occurred, the ALJ proceeds to Step Four; if not, the ALJ proceeds to Step Five.

iv. Step Four: the ALJ must determine whether the medical improvement is related to the ability to work. If the ALJ determines that it does, the ALJ proceeds to Step Six; if not, the ALJ proceeds to Step Five.

v. Step Five: the ALJ must consider whether any exceptions in section (d) or (e) apply. If not, the claimant's disability continues; if an exception in (d) applies, the ALJ proceeds to Step Six; if an exception in (e) applies, the claimant's disability has ended.

vi. Step Six: the ALJ determines if the claimant's impairments are severe within the meaning of the regulations. If the ALJ determines that they are not severe, the claimant's disability is found to have ended. If the impairments are severe, the ALJ proceeds to Step Seven.

vii. Step Seven: the ALJ must assess the claimant's residual functional capacity ("RFC") based on her current impairments and determine whether she can perform her past relevant work. If so, the claimant's disability has ended; if not, the ALJ proceeds to Step Eight.

viii. Step Eight: the ALJ evaluates whether other work (or past relevant work) exists that the claimant could perform, given her RFC, age, education, and past work experience. If a claimant cannot perform other work, her disability continues; if she can perform other work, her disability has ended.

-5-

Case 1:21-cv-00211-MOC   Document 16   Filed 05/26/22   Page 5 of 12

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the seven- and eight-step evaluation processes set forth above and as in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At Step One, the ALJ held that Plaintiff has not engaged in any substantial gainful activity as of February 1, 2019. (Doc. No. 8-3 at 18). At Step Two, the ALJ held that since February 1, 2019, Plaintiff has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.); see 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. At Step Three, the ALJ found that medical improvement occurred as of February 1, 2019. (Id. at 20). At Step Four, the ALJ determined that the medical improvement was related to the ability to work because as of February 1, 2019, Plaintiff's impairments at CPD no longer met or medically equaled the same listings that were met at the time of the CPD. (Id.). Therefore, the ALJ moved directly to Step Six and there found that Plaintiff's impairment or combination of impairments were severe. (Id.). At Step Seven, the ALJ determined Plaintiff's RFC, and found that as of February 1, 2019, Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with some non-exertional limitations. (Id. at 20). Since Plaintiff had no relevant past work that would come under Step Seven, the ALJ moved to Step Eight and held that Plaintiff can perform a significant number of other jobs in the national economy. (Id. at 23). The ALJ determined that Plaintiff's medical improvement of her impairments

since February 1, 2019 allow her to adjust to other work, and therefore conclusively held that Plaintiff was no longer disabled at that point either under Title II or Title XVI. (Id. at 20, 23–24).

V.   **Discussion**

For the following reasons, the Court finds that substantial evidence supports the agency's decision, the ALJ applied the correct legal standards in reaching that decision. Plaintiff raises two challenges to the ALJ's decision: (1) the ALJ deprived the Plaintiff of the inference based in statutory and case law that her disability continued; and (2) (a) the ALJ failed to provide an accurate and logical bridge between the evidence presented and his conclusion that Plaintiff's testified limitations are not credible, and (b) the ALJ failed to give appropriate weight to the opinions expressed by the vocational expert with respect to absence from the workplace. (Doc. No. 12 at 16, 19).

As discussed below, these arguments are unavailing. The medical improvement standard obviates Plaintiff's presumption argument, substantial evidence exists to support the ALJ's decision, and the ALJ gave appropriate weight to the testimony of the vocational expert.

   a. **The Medical Improvement Standard Obviates Plaintiff's Presumption Argument**

Plaintiff first argues that the ALJ failed to apply the standard mandated by Dotson v. Schweiker, 719 F.2d 80 (4th Cir. 1983) where a plaintiff is awarded a presumption of continuation of her disability. However, this argument ignores the complete picture of that standard. In Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1993), the Fourth Circuit explained that the Dotson standard is twofold—first, "an initial determination of disability gives rise to a presumption that the disability continues" and second, "[i]n order to rebut this presumption, the Secretary must come forward with evidence that the claimant's condition has improved." The ALJ found that this second piece was completed by a showing of evidence of medical improvement of Plaintiff's

-7-

Case 1:21-cv-00211-MOC   Document 16   Filed 05/26/22   Page 7 of 12

impairments as of February 1, 2019. (Doc. No. 8-3 at 20). Further, the ALJ found that the medical improvement is related to Plaintiff's ability to work because it resulted in an increase in her RFC. (Id.).

The ALJ cited substantial supporting evidence to corroborate these findings. The ALJ found that Plaintiff is independent in her personal care, lacks a need for continuous medical treatment, and takes no prescribed medications. (Id.). The ALJ noted that in September 2018, Plaintiff denied depression and reported having good friends and hobbies that included walking, exercising, gardening, going to church, music, and dancing. (Id. at 19). In March 2019, during group therapy, Plaintiff was noted to interact appropriately with the facilitator and other group members, was engaged in group activity, and described her emotional state as being content. (Id.). In fact, in September 2019, Plaintiff reported that she had stable housing and was seeking employment. (Id.). On September 23, 2019, Plaintiff told her therapist at Behavioral Health that she not only was continuing to seek employment, but also reported ongoing stability in her anxiety, that she was coping well with recent life stressors (moving, ongoing custody frustrations, etc.), and that she was enjoying the connections she was making from group work. (Doc. No. 8-8 at 653).

Furthermore, subsequent to Dotson, changes to section 423(f) of the Act (pursuant to the Social Security Disability Benefits Reform Act of 1984) clarified that "[a]ny determination made under this section shall be made on the weight of the evidence and on a neutral basis with regard to the individual's condition, without initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f); See Rhoten v. Bowen, 854 F.2d 667, 669 (4th Cir. 1988); Young v. Colvin, No. 1:12-cv-00074-MR-DLH, 2013 WL 5727408, at *4 (W.D.N.C. Oct. 22, 2013).

### b. The ALJ's RFC is Supported by Substantial Evidence

As mentioned, the ALJ found that at the time of the February 1, 2019 cessation, Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: Plaintiff is limited to simple, routine tasks, with frequent contact with coworkers and supervisors, and occasional contact with the public. (Doc. No. 8-3 at 20). Plaintiff can occasionally drive and cannot work in very loud environments. (Id.).

This RFC is supported by substantial evidence. As noted, substantial evidence means "more than a mere scintilla" but somewhat less than a preponderance. Richardson, 402 U.S. at 401. Therefore, the existence of even a preponderance of contrary medical and psychological evidence is insufficient to defeat the ALJ's RFC, which in this case is supported by much more than a scintilla of evidence, as discussed below. In addition, "the substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272–73 (8th Cir. 1988)).

As just mentioned, the ALJ cited evidence of Plaintiff's ability to seek jobs. Furthermore, the disability hearing officer ("HO") who initially reviewed Plaintiff's appeal noted that since the CPD, available records indicate that Plaintiff has had no mental health inpatient stays. (Doc. No. 8-5 at 18). The HO noted that in August 2018, Plaintiff was hospitalized for childbirth. The hospitalization was uneventful with no unusual behaviors or mental health complaints. (Id.). The HO noted that her longest employment was working for two years at The Limited, and she stopped working there because she was attending college. (Id.). The HO also noted that Plaintiff had never been fired from a job and did not routinely have problems getting along with coworkers/supervisors. (Id. at 19).

Furthermore, the ALJ noted that during the day, Plaintiff indicated performing housework, running errands, spending time with her son, reading, gardening, socializing with friends, and doing arts and crafts. (Doc. No. 8-3 at 19). Evidence of an ability to carry on "a moderate level of daily activities" can be inconsistent with a claimant's allegation of an inability to work. See Medina v. Astrue, 584 F. Supp. 2d 814, 823 (W.D.N.C. 2008); Pittman v. Massanari, 141 F. Supp. 2d 601, 610 (W.D.N.C. 2001). The Fourth Circuit has recognized that a claimant's daily activities may support a determination that he or she is not disabled. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (claimant performed a wide range of housework); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (claimant performed several activities including cooking, washing dishes, and generally taking care of the house).

In addition, the ALJ observed that on mental status exam, Plaintiff demonstrated clear speech, anxious mood, appropriate affect, and coherent thought processes. (Doc. No. 8-3 at 19). She showed some evidence of impaired insight and judgment regarding past psychiatric troubles but gave appropriate responses and intact cognition. (Id.). The ALJ also pointed out that during a medical visit in November 2020, Plaintiff "endorsed anxiety but described it as 'stable' and reported temporary work in retail, dishwashing, and landscaping." (Id.).

Furthermore, the ALJ found persuasive the opinions of State agency reviewing and examining consultants. (Id. at 22). For example, on January 31, 2019, Dr. Linda Tyrell opined as follows: the "[t]otality of findings appear to support that [claimant] appears to be functioning significantly better than at CPD given no medical care, no medications, no IP stays, and essentially normal AOL." (Doc. No. 8-4 at 37).

As also pointed out by the ALJ, on consultative examination by Dr. Jennifer Sadoff in November 2020 (Doc. No. 8-9 at 219), Plaintiff "demonstrated clear speech, anxious mood,

appropriate affect, and coherent thought processes." (Doc. No. 8-3 at 19). She also gave appropriate responses and had intact cognition. (Id.). Plaintiff also displayed the cognitive capacity to understand, remember, and carry out simple instructions; the ability to concentrate sufficiently to perform simple repetitive tasks; mild to moderate difficulty maintaining persistence and pace for tasks that require sustained attention; moderate to severe problems adapting to change and managing a stressful work environment; and a capacity for socially appropriate interactions with coworkers and supervisors. (Id.). Dr. Sadoff concluded Plaintiff would not have difficulty interacting appropriately with coworkers and supervisors. (Id. at 223).

Therefore, both reviewing and examining consultants generally support the ALJ's RFC, which restricts Plaintiff to simple, routine tasks without the stress and distraction of loud environments. Thus, the opinions of these psychological consultants support the parameters of the ALJ's RFC. See Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

Moreover, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations.")); Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the Commissioner and not the courts to resolve inconsistencies in the evidence, and that it is the claimant who bears the risk of non-persuasion."). When a district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The district court's inquiry is limited to determining whether substantial evidence supports the ALJ's decision.

Furthermore, the ALJ is solely responsible for assessing a claimant's RFC and is not bound by even treating physician disability opinions. See Russell v. Barnhart, 58 Fed. Appx. 25, 28–30, 2003 WL 257494 at **3–4 (4th Cir. Feb. 7, 2003) (upholding ALJ's rejection of treating physician opinion on basis that it was "unsupported by the treatment records"); Byrd v. Apfel, No. 98-1781, 1998 WL 911718, at *4 (4th Cir. Dec. 31, 1998) (affirming ALJ's determination that treating source opinion "was not supported by his own clinical findings and objective evidence"). The Court finds that the RFC is supported by substantial evidence.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Because there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: May 26, 2022

Max O. Cogburn Jr.
United States District Judge